UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| **In re:** | ) | Case No.: 06-40015-JJR-13 |
| William E. Rush, | ) | |
| Debtor; | ) | |
| **In re:** | ) | Case No.: 05-44868-JJR-13 |
| Christine Perkins, | ) | |
| Debtor; | ) | |
| **In re:** | ) | Case No.: 06-40027-JJR-13 |
| Dorothy African House, | ) | |
| Debtor; | ) | |
| **In re:** | ) | Case No.: 06-40035-JJR-13 |
| Marty L. Cook, | ) | |
| Debtor; and | ) | |
| **In re:** | ) | Case No.: 06-40131-JJR-13 |
| Gregory Scott Dunston, | ) | |
| Debtor. | ) | |

**MEMORANDUM OPINION ON OBJECTIONS TO CONFIRMATION**

On April 5, 2006, the respective chapter 13 plans (individually, a "Plan" and together the "Plans") filed by the above Debtors came before the Court for confirmation. All these cases were filed after October 17, 2005, the effective date for most provisions the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). The Alabama Department of Human Resources ("DHR") filed objections to the confirmation of each of the Plans. This Court has jurisdiction in these matters pursuant to 28 U.S.C. §§ 157 and 1334, and the Order of Reference of

1

the District Court. Confirmation of the Plans and DHR's objections thereto are core proceedings pursuant to 28 U.S.C. § 157(b)(L). For the reasons indicated below, the Court is overruling DHR's objections to confirmation.

## FACTS

All of the Debtors have debts for "domestic support obligations" ("DSO") as defined in section 101(14A) of the Bankruptcy Code (11 U.S.C. §§ 101 *et seq*, hereinafter the "Bankruptcy Code" and the "Code"). Each Plan proposes that the Debtor's periodic payments to the standing chapter 13 trustee (the "Trustee") will be disbursed over the duration of the Plan to pay allowed claims, including claims for DSO ("DSO Claims"). Creditors, regardless of their status as priority, non-priority (i.e. general unsecured) and secured creditors, are to receive contemporaneous, periodic disbursements. In most, if not all instances, disbursements from the first several Plan payments are more heavily weighted to the payment of the attorneys' fees due Debtors' counsel. Thus the Debtors' attorneys are paid their fees early in the life of the Plan while other claims are paid over the full duration of the Plans. In some instances, payments to secured creditors are to be made directly by the Debtors and not through the Trustee.

DHR holds DSO Claims in each of these cases. DHR objects to confirmation of the Plans on grounds that the DSO Claims, which are entitled to first priority status

2

under Code § 507(a)(1), are not being *paid in full* before payments are made to other creditors, whether such creditors hold priority or non-priority claims, or secured or unsecured claims. DHR concedes there is one exception to DSO Claims being paid first, that exception being adequate protection payments to secured creditors due under Code §§ 1325(a)(5)(B)(iii)(I) and (II). In other words, according to DHR, the total amount of the initial payments under each Plan must go exclusively to satisfy DSO Claims, with a carve-out to secured creditors for adequate protection payments. DHR specifically complains Plan payments will be made to the Debtors' attorneys before DSO Claims are paid in full. DHR alleges that although attorneys' fees are entitled to priority status under Code § 507(a)(2), priority is one step below the priority status DSO Claims, and therefore the Debtors' attorneys and other section 507(a)(2) administrative claimants must wait until DSO Claims are paid in full before receiving any disbursement from the Trustee.

## LAW

Bankruptcy Code § 1322 (a)(2) requires a plan to "provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title." DHR, the Trustee, and the Debtors all agree the proposed payments under the Plans must fully satisfy all priority claims to be confirmed. However, the Trustee and Debtors do not agree with DHR that DSO Claims must be paid in full before

3

payments can commence on other claims.

The simple answer to the issue raised by DHR is found in the plain language of Code § 1322(b)(4), which provides:

> (b) Subject to subsections (a) and ( c) of this section, the plan may–
>
> * * * *
>
> (4) provide for payments on any unsecured claim to be made concurrently with payments on any secured claim or any other unsecured claim.

A claim is defined in Code § 101(5) as a "right to payment" of virtually every conceivable kind, whether or not secured, and it includes a claim entitled to priority under Code § 507. Thus, section 1322(b)(4) allows payments for claims of differing kinds and priorities to be paid at the same time.

On the other hand, payments in a case filed under chapter 7 of the Bankruptcy Code are treated differently. Code § 726(a) provides that "property of the estate shall be distributed . . . (1) first, in payment of the claims of the kind specified in, and in the order specified in section 507 . . . ." Code § 103(b) limits the application of section 726(a) to chapter 7 cases. Congress could have easily provided a similar requirement for payment of priority claims under plans filed in chapter 13 cases, but instead it provided in section 1322(b)(4), that payment on any claim may be made concurrently with payments on any other claim, without making distinctions between priority, non-priority, secured and unsecured claims. If a chapter 13 case should fail

4

and is converted to a case under chapter 7 pursuant to Code § 1307, then section 726(a) would require priority claims to be paid in the order prescribed in section 507(a).[1]

Code § 1326(b)(1) adds further support to allowing simultaneous payment of claims of different priorities under a chapter 13 plan. This section provides:

> (b) Before or at the time of each payment to creditors under the plan, there *shall* be paid–
> (1) any unpaid claim of the kind specified in section 507(a)(2) of this title . . . (emphasis added).

Section 507(a)(2) claims include administrative claims due professionals, such as Debtors' attorneys. Section 507(a) ranks these administrative claims below DSO Claims. Nevertheless under section 1326(b)(1), creditors holding 507(a)(2) claims are to receive payments before or at the same time as other creditors. Unlike section 1322(b)(4), which provides that plans *may* provide for concurrent payment on different kinds of claims, section 1326(b)(1) mandates payments to holders of section 507(a)(2) claims either before or concurrently with payment to other creditors. The definition of "creditor" in Code section 101(10) includes a holder of a DSO Claim. Accordingly, DHR's objections to confirmation of the Debtors' plans cannot be sustained based on when Debtors' attorneys are paid under the Plans. The proposed

---

[1] Code subsections 726(b) and (c) make adjustments to the order of priority otherwise applicable under Section 507, most notably by elevating post conversion subsection 503(b) administrative claims over similar pre-conversion claims.

5

Plan payments of Debtors' attorneys' fees comply with the provisions of the Bankruptcy Code.

In light of Code §§ 1325(a)(5)(B)(iii)(I) and (II), DHR concedes the Plans may provide for adequate protection payments to secured creditors at the same time payments are being made to holders of DSO Claims. DHR takes the position that any additional payments to secured creditors, beyond what is required for adequate protection, is prohibited until DSO Claims are fully paid. As previously discussed, Code § 1322(b)(4) permits plans to "provide for payments on any unsecured claim to be made concurrently with payments on any secured claim or any other unsecured claim." Moreover, sections 1322(b)(3) and (5) permit chapter 13 Debtors to cure pre-petition monetary defaults in secured claims by paying the defaults through their plans. In light of subsections (b)(3) and (5) of section 1322, this Court must conclude that the Plans may include payments to secured creditors beyond adequate protection payments (i.e. payments intended to cure pre-petition defaults and maintain post-petition debt service), and Code § 1322(b)(4) permits these payments to be made concurrently with payments to other creditors, regardless of whether such other creditors are entitled to 507(a)(1) priority.

When the plain language of a statute is clear and unambiguous, the Court must enforce that statute "according to its terms." U.S. v. Ron Pair Enter., Inc., 489 U.S.

6

235, 241 (1989). This Court finds that the language of Bankruptcy Code § 1322 is clear and unambiguous, and it requires a chapter 13 plan to provide for full payment of claims entitled to priority under section 507, but such priority claims may be paid by deferred cash payments at the same time other priority claims, non-priority claims, and secured claims are being paid. The clear and unambiguous language of section 1326(b) requires plan payments be made to section 507(a)(2) administrative creditors no later than when payments are made to other creditors. So long as payments are being made while the case is pending under chapter 13, there is no requirement that priority claims, including DSO Claims, be first paid in full before disbursements to other creditors.[2]

Finally, DHR contends that this Court should construct an equitable remedy prohibiting other creditors from receiving payments under the Plans until the DSO Claims are satisfied. According to DHR, the claim of a creditor who extended pre-petition credit to a Debtor with a delinquent DSO should be subordinated to DSO

---

[2] The pre-BAPCA case of In re Aldridge dealt with the same issue now before this Court. 335 B.R. 889 (Bankr. S.D. Ala. 2005). In Aldridge, DHR took the position that section 507 required domestic support obligations of a chapter 13 Debtor to be paid in full before payments could be made under a plan to other creditors. The Aldridge Court determined that nothing in the Bankruptcy Code required payments under a chapter 13 plan to first satisfy priority claims before distributions commence to holders of other kinds of claims. The Court in Aldridge stated, "DHR filed this motion for instruction before the BAPCPA was enacted. Accordingly, the ruling in this case will only apply to cases filed before October 17, 2005." 335 B.R. at 891, n. 1. Nevertheless, this Court is of the opinion that if Aldridge had been decided after BAPCPA became effective, the result would be the same.

Claims. DHR accuses such a creditor of bad faith for having extended credit to someone who is not supporting his or her children or former spouse. DHR assumes a routine credit report or other available means, allows creditor to be informed of a Debtor's delinquent DSO; however, no proof was offered to support this assumption, and no evidence was presented that any of the creditors in these cases were aware of the outstanding DSO of the Debtors at the time pre-petition credit was incurred. Apparently DHR is asking the Court to invoke Code § 510(c) and equitably subordinate the claim of any creditor who extended pre-petition credit to a Debtor when the creditor knew, or should have known, of the delinquent DSO. This is a novel theory, and, if adopted, there is no reason it could not be expanded to any creditor who knew, or with diligent inquiry should have known, about delinquent pre-petition debts, DSO or otherwise. Because delinquent DSO indicates a Debtor is neglecting his or her children or former spouse, DHR argues DSO should be distinguished from other obligations. However, without further evidence of bad faith beyond mere extension of pre-petition credit by a creditor with knowledge of a Debtor's delinquent DSO, this Court is not prepared to find that equity or any provision of the Bankruptcy Code requires subordination of the claims of such a creditor.

DHR's theory of equitable subordination might be an appropriate remedy if

8

there was proof of collusion between the creditor and Debtor. This Court would consider subordinating a creditor's secured claim if, for example, it was shown that, immediately before filing bankruptcy, the Debtor purchased an expensive automobile with the understanding the related purchase money secured claim would be paid through a chapter 13 plan and dilute the Debtor's disposable income otherwise available to pay DSO Claims or other priority claims. Here however, there is no evidence on the Debtors' Forms B22C, Statement of Current Monthly Income, that their disposable incomes have been reduced because of monthly payments on secured claims for luxury items.

## CONCLUSION

For the foregoing reasons, the Court concludes that DHR's objections to confirmation of the Plans are due to be overruled.[3] Pursuant to Fed. R. Bankr. Proc. 9021, separate orders will be entered in each of the above cases overruling DHR's objection to confirmation of the Plans proposed in each such case, and resetting a hearing on confirmation of the Plan and the Trustee's objection to confirmation.

**Dated: April 27, 2006**

                                           **/s/ James J. Robinson**
                                           **JAMES J. ROBINSON**
                                         **United States Bankruptcy Judge**

---

[3] While DHR's objections to confirmation of the Plans proposed in the above cases were under consideration, Judge Jack Caddell, in a well reasoned opinion, reached the same conclusion as that set forth herein regarding payment of section 507(a)(1) claims under chapter 13 plans. In re Sanders, 2006 WL 1000461 (Bankr. N.D. Ala. Apr. 18, 2006).

9